IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN RAMON MOSBY #327-278         :

    v.                                 :     CIVIL ACTION NO. CCB-13-146

DEPARTMENT OF PUBLIC SAFETY AND    :
  CORRECTIONAL SERVICES
NORTH BRANCH CORRECTIONAL          :
  INSTITUTION
OFFICER HENDERSON                  :
OFFICER DURST
OFFICER HOOVER                     :
OFFICER MALLON
                                   :

**MEMORANDUM**

While incarcerated at North Branch Correctional Institution ("NBCI"), self-represented plaintiff Kevin Mosby, a Maryland Division of Corrections ("DOC") prisoner, filed this civil rights action seeking injunctive relief mandating his transfer from NBCI to a lower-security prison where he could receive mental health treatment designed to make him "whole." (Compl., ECF No. 1, at 2-3.) Alternatively, he requests transfer to any federal facility that would guarantee him a lower security classification. (*Id.*)

Plaintiff alleges that, although classified a medium-security prisoner, he is housed with violent maximum-security prisoners, including his cellmate, a convicted murderer, in violation of his Eighth Amendment rights. (*Id.* at 2.) He also claims he was ordered to serve his sentence in a mental health facility rather than a prison, and that the treatment process has yet to be initiated. (*Id.*) He alleges that defendants Henderson, Durst, Hoover, and Mallow have harassed and taunted him, asking him "why don't you kill yourself?" (*Id.*) Because several fellow prisoners have expressed animosity towards him, he is fearful. (*Id.*) Plaintiff states he was on "keeplock"

(presumably segregation status) and thus placed in danger. (*Id.*) He concludes that defendants' indifference to his situation is motivated by a retaliatory animus because he filed several lawsuits against corrections personnel relating to an incident that occurred while he was housed at Eastern Correctional Institution ("ECI"). (*Id.* at 1.)

The case is before the court for resolution of a dispositive motion filed by defendants, (ECF No. 17), which is unopposed.[1] Pursuant to Local Rule 105.6 (D. Md. 2011), no hearing is needed to resolve plaintiff's claims.

## PRELIMINARY MATTERS

Plaintiff, who seeks only injunctive relief, has been transferred from NBCI, a maximum security prison, to Western Correctional Institution, also a maximum security prison. Given that he remains incarcerated in a maximum security prison, his transfer from one prison to another has not rendered his lawsuit moot.

Plaintiff's claim that he is required to serve his sentences at Patuxent Institution ("Patuxent") finds no support in the record. Patuxent, a specialized institution, is the only dedicated treatment facility within the Maryland Department of Public Safety and Correctional Services ("DPSCS"). As noted on Patuxent's website:[2] "[The] facility provides treatment to men, women and youth in its Eligible Person (EP) program through the use of remediation management that combines psychiatry, psychology, social work and custody on each team."

Plaintiff is serving 29 years and six days as of June 13, 2013, for four counts of first-degree burglary, a violation of probation for housebreaking, use of a handgun in commission of a

---

[1] The record shows that on June 20, 2013, plaintiff was served with notice of defendants' filing pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). (ECF No. 18.) As of the within signature date, no opposition response has been filed. Plaintiff has, however, filed a motion for default judgment which was received by the Clerk on June 5, 2013. (ECF No. 16.) Defendants' responsive pleading was not due until June 19, 2013, the date on which it was filed. Thus, plaintiff's motion for default judgment will be denied.

[2] *See* http://www.dpscs.state.md.us/agencies/patuxent.shtml.

2

crime of violence, and second-degree assault. (OBCSIS printout, ECF No. 17-4.) Examination of Maryland's electronic docket indicates that while the sentencing courts in Montgomery and Prince George's Counties recommended he be considered for placement at Patuxent, such placement was not mandated.³ As noted below, plaintiff was evaluated by Patuxent staff in 2013 pursuant to judicial recommendation, and was denied admission to the program.

## STANDARD OF REVIEW

Defendants have moved to dismiss or, in the alternative, for summary judgment. "The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint." *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (internal quotation marks and citation omitted). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "accept[ ] as true the well-pled facts in the complaint and view[ ] them in the light most favorable to the plaintiff." *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) (internal quotation marks and citation omitted).

Ordinarily, a court may not consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion. *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Finley Lines Joint Prot. Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be

---

[3] *See* Circuit Court for Prince George's County, Case No. CT951677X; Circuit Court for Montgomery County Case No. 81411C; and Circuit Court for Montgomery County Case No. 101365C; available at http://casesearch.courts.state.md.us/inquiry/inquiry-index.jsp.

regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

This court deems it appropriate to consider the extraneous materials, as they are likely to facilitate disposition of this case.[4] Accordingly, defendants' motion shall be treated as a motion for summary judgment.[5]

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

---

[4] A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3rd ed. 2004). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided in this determination by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 163, 165-67. For reasons apparent herein, discovery is not required to resolve this case.

[5] Plaintiff's claims against the four named correctional officers shall be examined in the context of a motion for summary judgment. His claims against the DPSCS and NBCI, however, are subject to Rule 12(b)(6) dismissal. Under the Eleventh Amendment to the United States Constitution, a state and its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, see Md. Code Ann., State Gov't, § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, plaintiff's complaints concerning DPSCS and NBCI, a state agency and its prison, respectively, are barred by the Eleventh Amendment.

showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)) (internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Each claim shall be examined in light of this standard of review.

### A. CLASSIFICATION

Plaintiff alleges he should not be housed at a maximum security prison because he is not a maximum-security prisoner. (Compl. at 2.) Defendants argue that plaintiff has no legal right to be housed in a particular prison; plaintiff agreed to transfer from ECI (a medium security facility) to NBCI (a maximum security facility); and plaintiff's adjustment history warrants his continued placement at a maximum security facility. (Def.'s Mem., ECF No. 17-1, at 11-12.) Defendants' arguments find support both in the facts of this case and in the law as applied.

A classification decision or a transfer from one prison facility to another typically does not implicate a protected liberty interest or state a claim under § 1983. *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1492 (4th Cir. 1987). Indeed, prisoners have no liberty interest in being housed in any particular facility, *see Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983), and are not entitled as a matter of constitutional law to be housed under any particular security classification or at any particular prison, *see Slezak v.*

*Evatt*, 21 F.3d 590, 595 (4th Cir. 1994).

Plaintiff's suggestion that his placement in maximum security is retaliatory based on his previous litigation history, on the other hand, potentially states an actionable claim,[6] but is not supported in light of his adjustment history. While plaintiff was at ECI, Carolyn Marie Carter, Licensed Clinical Social Worker-Corrections, and Social Work Regional Supervisor for the DPSCS, wrote a memorandum to ECI corrections and psychology staff noting that plaintiff had been found guilty of an infraction for which he was sentenced to a year of disciplinary segregation. (Carter Mem., August 12, 2011, ECF No. 17-7.) Carter noted that the plaintiff had "been on the transfer list to 'any medium' [security institution] for several months, but given his segregation status" it was unlikely a medium security facility would accept him within the year. (*Id.*) She also noted that the plaintiff had been the subject of segregation review meetings in which the consensus was that he needed to be moved from ECI. (*Id.*) Carter further stated that the plaintiff, whom she saw that morning, had become increasingly angry and talked of potential violence that "I don't want to commit, but may not be able to help." (*Id.*) Carter indicated that Dr. Pinn, an ECI psychologist, thought plaintiff would benefit more from NBCI's behavioral management program than anything that could be offered at ECI. (*Id.*) Carter had discussed such a transfer with the plaintiff who indicated a willingness to have his security status increased in order to go to another institution where he could get help. (*Id.*)

On September 6, 2011, a Security Reclassification Instrument was prepared recommending an increase in plaintiff's security status to maximum with transfer to NBCI for

---

[6] Retaliation, though not expressly referenced in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597-98 (1972). In order to prevail on a claim of retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim." *ACLU of Maryland, Inc. v. Wicomico Cnty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993).

participation in the Behavior Management Program. (Security Reclassification Instrument, ECF No. 17-8.) The recommendation was approved by case management staff on September 7, 2011, by the Warden on September 12, 2011, and by the Commissioner's office on September 22, 2011. (*Id*. at 2.) The Commissioner's designee, Randy Watson, noted that plaintiff's adjustment history warranted a security increase to maximum. (*Id*.)

Plaintiff was transferred from ECI to NBCI on October 3, 2011. (Offender Transit History, ECF No. 17-6, at 2; *see also* Case Notes, ECF No. 17-9, at 5 (entry dated October 4, 2011).) Plaintiff had his NBCI orientation interview on October 12, 2011, and was seen again on October 20, 2011, for his disciplinary segregation review at which time he was advised that he was due to come off of disciplinary segregation status on August 31, 2012. (Case Notes at 4-5 (entries dated October 12 and 20, 2011).) Plaintiff was scheduled for monthly disciplinary segregation reviews but occasionally refused to participate. (*Id.* at 2-4.)

On November 2, 2011, plaintiff received an infraction and was placed on staff alert status for breaching his security slot and stabbing a correctional officer in the arm with a pen when that officer attempted to remove the jumpsuit that plaintiff had tied around the slot. (Notice of Inmate Rule Violation, with attachments, ECF No. 17-10, at 1-2, 5.) Plaintiff was found guilty of the infraction at a November 17, 2011, adjustment hearing and received sentences of 250 days concurrent in disciplinary segregation, 60 days concurrent on cell restriction, a loss of visits for 180 days, and a loss of 250 days of good conduct credits ("GCC"). (*Id.* at 6-15.)

On April 13, 2012, plaintiff received another infraction for breaking the fire suppression system in his cell and causing a flood for which he received 180 days of disciplinary segregation and lost 90 days of GCC. (Notice of Inmate Rule Violation, ECF No. 17-11, at 2-3, 9.) That same day, plaintiff received another infraction for attempting to assault the officer who placed

7

him in another cell after his cell flooded. (Notice of Inmate Rule Violation, ECF No. 17-12, at 2.) After plaintiff was placed in the cell and the door closed, he kicked off his shoes, stepped through his handcuffs, and thrust his arm through the feed-up slot in an attempt to grab the officer's arm. As a result, pepper spray was applied. (*Id.*) Plaintiff was then placed on staff alert. (Staff Alert Designation Notice, ECF No. 17-13). At the adjustment hearing held on April 24, 2012, for attempted assault on an officer, plaintiff received 250 days of disciplinary segregation, a loss of visits for one year, and a loss of 120 days of GCC. (ECF No. 17-12, at 4-8.)

Plaintiff received another infraction on May 12, 2012, when he attempted to assault a fellow prisoner and became combative when officers attempted to restrain him. (Notice of Inmate Rule Violation, ECF No. 17-14, at 2.) At his May 23, 2012, adjustment hearing plaintiff received 180 days of disciplinary segregation, a loss of 120 days of GCC, an indefinite loss of visits, and 60 days of cell restriction concurrent to his already-existing sanctions. (*Id*. at 4-15.)

Plaintiff completed his disciplinary segregation on December 18, 2012, and was assigned to the sanitation job bank on January 2, 2013. (Case Notes at 2 (entry dated January 3, 2013).) On January 15, 2013, plaintiff received another infraction for refusing to lock in his cell. (Notice of Rule Violation, ECF No. 17-15, at 2.) He received 25 days of cell restriction for the infraction at an adjustment hearing held on January 31, 2013. (*Id*. at 6-11.)

A referral for transfer to Patuxent Institution by Montgomery County Circuit Court Judge Eric Johnson was administratively denied by Patuxent personnel on February 26, 2013. (ECF No. 17-16.) On March 8, 2013, NBCI case management staff noted that Patuxent's clinical staff had completed a document review of plaintiff's referral and had determined that further assessment would not occur due to the administrative denial. (Case Notes at 1 (entries dated

March 8 and 13, 2013.)

On March 11, 2013, plaintiff received another infraction for refusing to return to his cell, and he received 45 days of disciplinary segregation at the adjustment hearing held on March 25, 2013. (Notice of Inmate Rule Violation, with attachments, ECF No. 17-17, at 2, 6-8; OBSCIS printout, ECF No. 17-18, at 2.)

On April 18, 2013, plaintiff received a disciplinary segregation review where it was determined that his disciplinary segregation sentences were due to expire on April 24, 2013. (Case Notes at 1 (entry dated April 18, 2013).) On April 25, 2013, he was again seen by case management staff to ensure his smooth transition back into the general prison population and to discuss his job eligibility. Plaintiff was told that he did not "score" for medium security placement at that time and was advised that he should take advantage of various programs. (*Id.* (entry dated April 25, 2013).) Plaintiff received another infraction on June 9, 2013, for which he was found guilty at the adjustment hearing held on June 11, 2013. (OBSCIS printout, ECF No. 17-18, at 1.)

Plaintiff's adjustment history subsequent to the June 19, 2013, filing of defendants' dispositive motion is unknown. What is apparent, however, is that plaintiff's conduct—not defendants' alleged retaliatory animus—is the controlling factor leading to his security classification and placement in a maximum security facility.

## B. FAILURE TO PROTECT

Plaintiff alleges he is in danger while housed at maximum security institutions that house violent prisoners. (Compl. at 2.) To the extent this claim is one for failure to protect, it fails.

In *Pressly v. Hutto*, a Virginia inmate sued correctional officers for failing to protect him from attack by another inmate. 816 F.2d 977 (4th Cir. 1987). The Court of Appeals held that

"[t]he [E]ighth [A]mendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm." *Id*. at 979. Complaints that do not allege deliberate indifference to a specific known risk of harm, however, fail to state a claim under § 1983. *See Ruefly v. Landon*, 825 F.2d 792, 793 (4th Cir. 1987). Plaintiff's claim that he is in danger is speculative at best.[7] While at NBCI, plaintiff had no known enemies housed at that facility. (*See* ECF No. 17-25.) Furthermore, defendants aver, and plaintiff fails to dispute, that they did not taunt, threaten, or harass plaintiff while he was housed at NBCI. (Henderson Decl., ECF No. 17-21, ¶ 4; Durst Decl., ECF No. 17-22, ¶ 4; Hoover Decl., ECF No. 17-23, ¶ 4; Mallow Decl., ECF No. 17-24, ¶ 4.) Defendants are entitled to summary judgment on this claim.

### C. MENTAL HEALTH TREATMENT

Finally, plaintiff claims he has been denied mental health treatment. (Compl. at 2.) To state a claim for inadequate medical care, a plaintiff must demonstrate deliberate indifference to a serious medical need.[8] *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *Farmer v. Kavanagh*, 494 F. Supp. 2d 345, 361 (D. Md. 2007). "Deliberate indifference" requires that the defendant prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Johnson*, 145 F.3d at 167 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (internal quotation marks omitted). Addressing the denial of psychological treatment, the Fourth Circuit has held that a prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable certainty (1) that the prisoner's

---

[7] In any event, plaintiff no longer is at NBCI. His injunctive relief request that he be transferred from NBCI because defendants allegedly taunted him to commit suicide is now moot.
[8] Under the Eight Amendment, there is "no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart." *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977).

symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977). Further, the treatment must be medically necessary, not just desirable. *Id.* at 48; *see also De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (noting that "a prisoner does not enjoy a constitutional right to the treatment of his or her choice"). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970)).

Plaintiff received psychological treatment while at NBCI. Psychological records from December 2011 through June 14, 2013, show plaintiff has a history of often refusing to go to the mental health clinic and/or refusing to take psychiatric medication. (ECF No. 17-20.) He was noncompliant with medication and appointments from May through June 2012. (*Id*. at 2-6, 47-48, 51-52.) On July 16, 2012, psychology staff noted that plaintiff would be seen on an as needed basis. (*Id*. at 53.) On July 20, 2012, it was noted that plaintiff would not be rescheduled for appointments due to his multiple refusals to be seen. (*Id*. at 54.) Plaintiff was seen for segregation visits, however, and his chart continued to be monitored throughout the remainder of 2012. (*Id*. at 57-62.)

On January 15, 2013, Amanda Tart, Licensed Clinical Professional Counselor, noted that, because plaintiff was no longer on segregation, follow-up would be provided as needed by treatment staff in Housing Unit 2, where plaintiff was currently functioning in the general prison population. (*Id.* at 63.) Plaintiff was seen again on March 29, 2013, on a self-referral after receiving another disciplinary segregation sentence. (*Id*. at 63-65.) During the session plaintiff

11

was alert, oriented, and cooperative. (*Id*. at 65.) There was "no evidence of psychosis, mania, or any other Axis I symptoms," and plaintiff indicated that he would self-refer as needed in the future. (*Id*.) It was also noted that, although plaintiff has a history of previous medication management for bipolar disorder, it was discontinued due to noncompliance. (*Id*.)

Applying the standard for stating an Eighth Amendment violation due to inadequate medical care, the above record fails to demonstrate deliberate indifference to plaintiffs' need for mental health care at NBCI.

## CONCLUSION

For the foregoing reasons, defendants are entitled to summary judgment. Their dispositive motion will be granted and this case closed by separate order.


<u>March 19, 2014</u>             <u>     /s/     </u>
Date            Catherine C. Blake
           United States District Judge